IREDALE & ROTH APC
Danielle R. Iredale (Cal. Bar 304693)
Owen Roth (Cal. Bar 335891)
185 West F Street, Suite 100
San Diego, CA 92101
Telephone: (619) 230-5606
              (619) 230-5204
Email:        danni@iredaleroth.com
              owen@iredaleroth.com

Counsel for Plaintiff
Josef Friwat

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSEF FRIWAT<br><br>                    Plaintiff,<br><br>         v.<br><br>COUNTY OF SAN DIEGO, KELLY MARTINEZ in her individual capacity; SHERIFF'S DEPUTY DOES 1–5; CALIFORNIA ATTORNEY GENERAL ROB BONTA in his individual capacity,<br><br>                    Defendants. | CASE NO.   **'26CV0993 JLS  VET**<br><br>**COMPLAINT**<br><br>**(1)   Unsafe Transportation**<br>**(2)   Unlawful Detention**<br>**(3)   Bane Act**<br>**(4)   Bane Act**<br>**(5)   Negligence**<br>**(6)   Recklessness**<br>**(7)   Vicarious Liability**<br>**(8)   California Vehicle Code § 17001**<br><br>**JURY TRIAL DEMANDED** |

COMES NOW, Josef Friwat, through his counsel of record, and alleges and complains as follows:

**I**

**JURISDICTION AND VENUE**

1.    This civil action arises from plaintiff Joseph Friwat's improper detention in San Diego County and subsequent transfer from the San Diego Sheriff's Office to the Sacramento County Sheriff's Office. Mr. Friwat was arrested in San Diego County on a

warrant obtained by the California Attorney General, pursuant to an indictment venued in Sacramento County. Mr. Friwat suffered a deprivation of his rights to a prompt arraignment and bail hearing as required by California law, due to the acts and omissions of the Attorney General. Subsequently, the San Diego Sheriff's Office transferred Mr. Friwat to the custody of the Sacramento County Sheriff, by driving him several hours north. In doing so, the Sheriff's Office and Sheriff Does #1 through #5 failed to secure Mr. Friwat safely and reasonably, and failed to operate the vehicle in a reasonably prudent way, thereby causing Mr. Friwat significant bodily injuries and long-lasting pain.

2. This Court has subject-matter jurisdiction over this action because the complaint alleges the deprivations of civil rights arising under the Constitution and laws of the United States and the request to recover damages for those deprivations, as well as claims arising under the laws the State of California that are so related to the federal claims that they form part of the same case or controversy. Jurisdiction is proper under Title 28, United States Code, Sections 1331, 1343(3) and (4), and 1367.

3. This Court has personal jurisdiction over defendant County of San Diego because the San Diego County Sheriff's Office is a governmental entity organized and operating in California, specifically in San Diego County.

4. This Court has personal jurisdiction over defendant California Attorney General because the Attorney General is a state constitutional officer of California with principal place of business in California.

5. This Court has personal jurisdiction over defendant Sheriff Does #1 through #5 because they reside in California, and because they work in California and were present in the state when they committed acts and omissions giving rise to claims against them.

6. Mr. Friwat has complied with the California Tort Claims Act. His claim against San Diego County was timely submitted to the County on July 25, 2025. The County did not respond within 45 days, constituting a denial as of September 8, 2025. Mr. Friwat brings this complaint within six months of the denial. He also submitted his State of California Government Claim Form for his claim against the California Attorney General

1

Office on September 24, 2025. He received no written denial, and 45 days have elapsed, constituting a denial. He files this lawsuit within 6 months of the operative denial.

7.    This Court is a proper venue for this lawsuit because the acts and omissions that form the basis of Mr. Friwat's claims occurred in San Diego, California, within the Southern District of California.

## II.

### THE PARTIES

8.    Joseph Friwat, the Plaintiff, is and was at all relevant times a resident of San Diego County, California.

9.    Defendant County of San Diego is a public entity, duly organized and existing under the laws of the State of California. Under its authority, Defendant County of San Diego operates and manages the San Diego County Sheriff's jails and the conduct of Sheriff's Deputies who conduct jail operations. It is, and was at all relevant times mentioned herein, responsible for the actions and/or inactions and the policies, procedures and practices and customs of the jails, and their respective employees and agents.

10.    Defendant Kelly Martinez was, at all relevant times, the Sheriff of the County of San Diego, the highest position in the San Diego County Sheriff's Office. As Sheriff, Defendant Maritnez was responsible for the hiring, screening, training, retention, supervision, discipline, counseling, and control of all San Diego County Sheriff's Office custodial employees and agents, including Doe Defendants.

11.    At all times relevant to this complaint, Defendant Kelly Martinez was a policymaker for the San Diego Sheriff's Office, and was responsible for promulgation of the policies and procedures and allowance of the practices, policies, and customs pursuant to which the acts of the Sheriff's Office alleged herein were committed, as well as the supervision and control of officers who are or were employed by the Sheriff's Office, who are under her command or who report to her, including the Doe Defendants.

12. Defendant California Attorney General Rob Bonta is a state constitutional officer of the State of California with principal place of business in Sacramento, California. The Attorney General is, and was at all relevant times, responsible for promulgation of the policies and procedures and allowance of the practices, policies, and customs pursuant to which the acts of his Office alleged herein were committed, as well as the supervision and control of employees operating under color of state law, including Deputy Attorney General 1.[1]

13. Defendant Sheriff Does 1 through 5 are individuals employed by the San Diego Sheriff's Office and are sued in their individual capacities. Plaintiff believes and alleges in good faith that Sheriff Does 1 through 5 reside in California.

14. Defendant Sheriff Martinez is sued in her individual capacity for her own personal action or inaction, and sued in her official capacity insofar as she bears vicarious liability for the acts and omissions of Sheriff's Deputies.

15. The San Diego Sheriff's jails are owned and operated by the County of San Diego and staffed by County of San Diego.

16. Mr. Friwat is truly ignorant of the true name and capacity of Sheriff's Deputy Does #1 through #5, and will amend this complaint once their identities have been ascertained.

17. These Defendants were agents, servants and employees of each of the other named defendants and were acting at all times within the full course and scope of their agency and employment, with the full knowledge and consent, either expressed or implied, of their principal and/or employer and each of the other named defendants. Each of the defendants approved or ratified the actions of the other defendants, thereby making the currently named defendants herein liable for the acts and/or omissions of their agents, servants and/or employees.

---

[1] Mr. Friwat knows the true name of Deputy Attorney General 1. However, Deputy Attorney General 1 is not named as a defendant at this time, and so Mr. Friwat refers to him anonymously as a matter of courtesy.

3

### III.

### FACTS

18.    On March 27, 2025, law enforcement arrested Mr. Friwat on charges arising from allegations of tax offenses under California law. The case was brought in Sacramento County Superior Court by the California Attorney General's Office, and specifically by Deputy Attorney General 1.

19.    Mr. Friwat had long known of the potential for charges: he had been subjected to warrant-authorized searches in December 2022, and his attorney had been in regular contact with law enforcement about the case since then. Moreover, the State gave notice of electronic searches under California law in September 2024.

20.    Though counsel had long offered to surrender Mr. Friwat voluntarily if he were charged, the State executed the arrest and booked him into custody. To be sure, the State had the discretion to proceed this way. Mr. Friwat was arrested in San Diego, where he resides.

21.    California Penal Code Section 825 provides that a defendant must be taken before a judge for arraignment "without unnecessary delay, and, in any event, within 48 hours after his or her arrest, excluding Sundays and holidays."

22.    Mr. Friwat was arrested Thursday, March 27, 2025. Excluding Sundays and Memorial Day (May 31, 2025), the Government had to bring Mr. Friwat before a judge by Tuesday, April 1. That did not happen. Mr. Friwat never saw a judge in San Diego County. He did not see a judge until April 3, in Sacramento County.

23.    When queried about the delay, Deputy Attorney General 1 reported only that they did not anticipate Mr. Friwat seeing a judge until after his transfer to Sacramento. When pressed, Deputy Attorney General 1 claimed to have contacted the custodial facilities and the Court in San Diego to see if Mr. Friwat could see a judge. On information and belief, at no point during the time required by law did Deputy Attorney General 1 contact the San Diego County District Attorney's Office to arrange for Mr. Friwat to see a judge, or otherwise take any proper steps to ensure this would happen.

24.    This delay was unwarranted and inexcusable. It denied Mr. Friwat due process and it kept him in custody without any notice of the charges, ability to assess bond, or prepare a defense. It also deprived of formal attachment of his right to counsel.

25.    The State also denied Mr. Friwat his right to a timely bond hearing. Penal Code Section 821 provides that when a defendant is arrested in a county other than the one he is charged in, an officer "must, without unnecessary delay, inform the defendant in writing of his right to be taken before a magistrate judge in that county, note on the warrant that he has so informed defendant and, upon being required by defendant, taken him before a magistrate in that county, who must admit him to bail . . . ."

26.    Per California law, law enforcement had to advise Mr. Friwat in writing of his right to a bail hearing, and if Mr. Friwat requested it, to ensure he saw a judge. But on information and belief, no member of law enforcement explained Mr. Friwat's right to a bail hearing him. On information and belief, one member of law enforcement showed Mr. Friwat a piece of paper and said that if he signed it, he would not have to be transferred immediately to Sacramento County. This in no way advised him of his right to see a judge in San Diego.

27.    Mr. Friwat did not know of his right to a hearing in San Diego until after he had been transferred to Sacramento County, when his attorneys finally were able to confer with him. Due process required him to receive a prompt bail hearing; he did not get one.

28.    Had Mr. Friwat had a bail hearing in San Diego County, he likely would have posted bond and obtained release in San Diego. This would have allowed Mr. Friwat to travel on his own to Sacramento County for his arraignment, rather than be transported by the San Diego Sheriff's Office. Had Mr. Friwat been able to post bail in San Diego, he would not have been injured by the acts and omissions of the San Diego Sheriff's Office.

29.    After keeping Mr. Friwat in jail for days without taking him before a judge, the State transferred him from San Diego to Sacramento County on Wednesday, April 2, 2025. This transfer occurred between the San Diego and Sacramento County Sheriff's Offices.

30. To transfer Mr. Friwat, San Diego Sheriff's Deputies Does 1 through 5 five-point shackled him and loaded him into the back "holding pen" of a Ford F450 truck. On information and belief, the truck looked like this:

31. The holding pen depicted above contains several individual cages, completely segregating in-custody individuals from each other. Mr. Friwat was placed inside one of these cages and locked inside. He was made to sit on a metal bench inside the cage, without a seatbelt or other security feature. For the hours of this drive, he bounced up and down on the metal seat as the truck sped and hit multiple potholes, and slammed into the walls of the cage.

32. Sheriff's Deputy Doe 1 drove the vehicle at an unsafe speed for the conditions. This drive caused Mr. Friwat intense pain in his back and neck. When he complained to a San Diego Sheriff's Deputy during a stop, one Defendant Deputy Doe responded in substance that they were driving on California highways, which are full of potholes.

33. San Diego Sheriff's Office policy appears to state that "[a]fter accepting custody of inmate(s) from a facility, the transporting deputy assumes the responsibility for the safety, welfare and security of the inmate under their supervision." The policy also adds that "[s]eatbelts will be used to secure inmates, unless it would create a potential injury situation to the deputy and or inmate." Provisions of the California Vehicle Code further require that passengers in vehicles are secured with seatbelts.

6

34.     Somewhere between San Diego and Sacramento, Mr. Friwat was transferred to the Sacramento County Sheriff's Office, who brought him the rest of the way north in a van.

35.     After Mr. Friwat (finally) saw a judge on April 3, 2025, in Sacramento, he posted bail and returned home to San Diego County.

36.     Mr. Friwat soon consulted with a doctor and was diagnosed, through X-rays, with a wedge compression fracture in his lumbar spine. He continues to experience pain in his back, as one would expect for a 61-year old man who suffered a spinal fracture under these circumstances. He also continues to experience pain in his neck.

37.     Mr. Friwat did not have pain of this magnitude in his neck or back prior to the transportation by the San Diego Sheriff's Office. It was the acts and omissions during the transportation that caused his injuries and ongoing pain.

**IV.**

**FIRST CAUSE OF ACTION**

**(Unsafe Transportation Under 42 U.S.C. § 1983)**

(Defendants County of San Diego and Sheriff's Deputy Does 1 through 5)

38.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 36 as if fully set forth herein.

39.     At all relevant times, Plaintiff Joseph Friwat was a pretrial detainee; he had been charged with tax offenses under California law, but no more. As a pretrial detainee, he had a clearly recognized liberty interest under the Fourteenth Amendment to be free from conditions of confinement that posed a substantial risk of serious harm. Nevertheless, Defendants San Diego Sheriff's Office and Sheriff's Deputy Does imposed conditions of confinement that caused Mr. Friwat serious harm.

40.     The noted Defendants transported Mr. Friwat for several hours as part of a transfer to the Sacramento County Sheriff's Office. In doing so, they did not secure Mr. Friwat in an ordinary and reasonable manner for any person traveling in a vehicle on the State's roads. They did not secure Mr. Friwat with a seatbelt. They did not seat him on a

7

seat that could absorb any bumps or dips that the vehicle encountered on the road. They did not give him free movement of his hands or feet so that he could attempt to balance himself. Instead, these defendant shackled Mr. Friwat's feet together, and hands together, and hands to his waist (*i.e.*, a "five-point shackle"). They placed him in a metal box, or holding pen, affixed to the back of a Sheriff's Office Ford F450 truck. They sat him on a metal bench, without restraints. And they drove at unreasonably high rates of speed on California highways. Mr. Friwat suffered serious and predictable injuries to his neck and spine – the very injuries that many safety guidelines and regulations exist to prevent.

41. The noted Defendants also acted with deliberate indifference to Mr. Friwat's safety. On information and belief, each Deputy Doe knew that reasonable and ordinary measures for traveling on the State's roads included use of appropriate safety restraints and seating in a way that allows a person to avoid undue shocks from bumps, potholes, and the like. Yet these Defendants intentionally five-point shackled Mr. Friwat, put him in the back of the truck without a safety restraint, and then drove for hours at unreasonable speeds. When Mr. Friwat was finally able to express concerns about how he was being injured, their only response was to comment on the potholes on the highways.

42. The Sheriff's Deputy Doe Defendants also acted with deliberate indifference by securing Mr. Friwat with a "five-point shackle" and otherwise failing to secure him safely. Mr. Friwat has been charged with tax offenses under California law. He has no prior criminal history. He has not been charged with an offense that could suggest he poses a risk of harm to any person, and nothing in his history otherwise suggests he is such a risk. Under such circumstances, the Sheriff's Deputies had no reasonable basis to believe a "five-point shackle" was necessary for Mr. Friwat. By shackling Mr. Friwat this way, they deprived him of the ability even to maintain his balance while locked in the cage of the holding pen.

43. The Sheriff's Deputy Doe Defendants also acted with deliberate indifference by their disregard of Sheriff's Office policies concerning the safety of people in custody. For example, San Diego Sheriff's Office policy appears to state that "[a]fter accepting

8

custody of inmate(s) from a facility, the transporting deputy assumes the responsibility for the safety, welfare and security of the inmate under their supervision." The policy also adds that "[s]eatbelts will be used to secure inmates, unless it would create a potential injury situation to the deputy and or inmate." Further, California law requires passengers in vehicles to be safely restrained with a seatbelt; Mr. Friwat had no ability to secure himself because he was shackled and placed in a cage without a seatbelt, and the Doe Defendants did nothing to secure him. The Deputy Doe Defendants disregarded these policies and law, and others, in their disregard of Mr. Friwat's safety.

44. The Sheriff's Deputy Doe Defendants drove an official San Diego Sheriff's Office vehicle, which had been outfitted for the purpose of transporting individuals in custody. On information and belief, the San Diego Sheriff's Office has an established procedure of transporting pretrial detainees in this vehicle or ones just like it, under circumstances posing serious and avoidable risks of harm. On information and belief, this established procedure runs counter to the Sheriff's Office's written policies.

45. At all times, Defendants acted under color of state law. Defendant Sheriff's Deputy Does were employed by the San Diego Sheriff's Office and were acting in their official capacities at all relevant times. The County is liable for the actions of the San Diego County Sheriff's Office, a governmental entity that operates under color of state law.

46. Defendants deprived Mr. Friwat of his rights as secured by the Constitution of the United States. The deprivation of Plaintiff's rights caused him to suffer serious injuries to his back, and to lasting pain in his neck and back.

47. As a direct and proximate result of the Defendants' conduct, Mr. Friwat sustained a wedge fracture in his spine, pain and suffering, and emotional distress.

//

//

//

//

//

## V.

## SECOND CAUSE OF ACTION

## (Unlawful Detention Under 42 U.S.C. § 1983)

(Defendant California Attorney General)

48.     Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 47 as if fully set forth herein.

49.     The California Attorney General is the principal law-enforcement officer for the State of California. Acting pursuant to his lawful authority, he obtained, by and through Deputy Attorney General 1, an indictment against Mr. Friwat on March 27, 2025. Mr. Friwat was arrested the same day in San Diego County.

50.     As the prosecuting authority securing the indictment under California law, the California Attorney General was a state constitutional officer responsible for ensuring that Mr. Friwat was afforded rights under California law that accrued upon his arrest.

51.     Mr. Friwat had a liberty interest under the Fourteenth Amendment to be brought before a judicial officer for arraignment within a reasonable time. California law, and specifically Penal Code Section 825, required the State to have him brought before a judge without unnecessary delay and otherwise within 48 hours of arrest, excluding weekends and holidays.

52.     Similarly, Mr. Friwat had a liberty interest under the Fourteenth Amendment to be brought before a judicial officer in San Diego County. California law, and specifically Penal Code Section 821, required the State to give him the opportunity to see a judge for a bail hearing promptly.

53.     The same day that Mr. Friwat was arrested, Deputy Attorney General 1 was on notice that Mr. Friwat was entitled to an arraignment and a bail hearing within deadlines provided by California law. Yet, Deputy Attorney General 1 neither took steps in advance of the arrest to ensure Mr. Friwat received these hearings, nor took any steps upon receiving notice of the need to do so.

10

54. Under California law, Mr. Friwat was entitled to his arraignment no later than April 1, 2025. Yet that day, Deputy Attorney General 1 informed Mr. Friwat's counsel that no arraignment would occur because Mr. Friwat "did not have a San Diego case number." Yet it was Deputy Attorney General 1 who was responsible for obtaining such a case number by coordinating with the San Diego County District Attorney's Office to open an "out of county" matter. On information and belief, Deputy Attorney General 1 never contacted the San Diego County District Attorney's Office about opening a case in San Diego.

55. Similarly, despite existence of on-point statutory authority and notice from Mr. Friwat's counsel, Deputy Attorney General 1 took no steps to ensure that Mr. Friwat could exercise his right to a bail hearing in San Diego County, where he was held in custody.

56. Because Deputy Attorney General 1 took no appropriate steps to afford Mr. Friwat his rights under California law, Mr. Friwat was improperly held for days without seeing a judge for an arraignment, and spent this time in custody with no notice of the charges against him. He also suffered deprivations of the rights that attach when a person is arraigned, such as the formal accrual of his Sixth Amendment right to counsel. These acts and omissions deprived Mr. Friwat of due process under the Fourteenth Amendment and caused him emotional distress and injury, as he was held without knowing why for days.

57. Because Deputy Attorney General 1 took no appropriate steps to afford Mr. Friwat his rights under California law, Mr. Friwat had no opportunity to see a judge in San Diego County regarding his bail. As a result, Mr. Friwat was deprived of the opportunity to post bond in San Diego and thereafter transport himself to Sacramento County for his initial appearance and arraignment there. As a result, Mr. Friwat was transported by the San Diego Sheriff's Office and Doe Defendants in a manner that caused him serious injuries to his spine and neck.

58. The California Attorney General acted under color of state law, and deprived Mr. Friwat of rights secured by the Constitution of the United States, by failing intentionally to ensure that Mr. Friwat was brought before a judicial officer within the time required by law for an arraignment and a bail hearing.

59. As a result, Mr. Friwat suffered physical and psychological stress from sitting in custody for days without any notice of the charges against him. This is precisely the injury that California law and the U.S. Constitution seek to prevent, by requiring a timely arraignment. The delay here was inexcusable and the cause of Plaintiff's injuries.

60. So too, Mr. Friwat suffered physical and psychological stress and injury as a result of the intentional failure to secure a bond hearing. Though California law afforded Mr. Friwat an opportunity to seek bail, the California Attorney General did not afford him that opportunity while he was held in San Diego. As a result, Mr. Friwat spent more time in custody than necessary, and he suffered the injurious transportation to the Sacramento County Sheriff's Office.

## VI.

### THIRD CAUSE OF ACTION

### (Bane Act)

(Defendant San Diego County, Sheriff's Office and Deputy Doe Defendants)

61. Mr. Friwat repeats and realleges the allegations set forth in paragraphs 1 through 60 as if fully set forth herein.

62. Mr. Friwat had rights under the Fourth and Fourteenth Amendments of the U.S. Constitution to be free from unsafe conditions of confinement.

63. Defendants Sheriff's Deputy Does interfered with Mr. Friwat's Fourth and Fourteenth Amendment rights by transporting him in unsafe conditions and driving in an unreasonable manner.

64. The interference occurred by way of threats, intimidation, or coercion. Sheriff's Deputy Does five-point shackled Mr. Friwat and loaded him into a cage inside the holding pen of the Ford F450 truck used by the Sheriff's Office. As a pretrial detainee,

Mr. Friwat had no say in the manner of his transportation. He did not want to be transported in this manner, but had no choice. And as a result, he had no ability to protect himself or avoid the injuries he sustained during the transportation.

65. The Sheriff's Deputy Doe Defendants acted with the specific intent to deprive Mr. Friwat of his constitutional rights. They knowingly and intentionally subjected Mr. Friwat to unsafe transportation conditions without adequate safety measures. Sheriff's Deputy Doe Defendants committed the acts and omissions that caused and resulted in Mr. Friwat's physical and psychological injuries.

66. The Sheriff's Deputy Doe Defendants committed these acts and omissions during and in the course of their employment by the San Diego County Sheriff's Office, and were acting at and under the direction of Sheriff Martinez. Sheriff Martinez and the Sheriff's Office are therefore liable for the acts and omissions of the Deputy Doe Defendants acting within the scope of their employment. The individual deputies are not immune from liability pursuant to California Government Code §815.2.

67. Mr. Friwat suffered injury as a result of Defendants' conduct. He suffered a fracture in his spine and he continues to this day to experience pain in his neck and spine. He also continues to suffer from anxiety and distress over the experience and from the concern that his pain and physical condition will not recover or materially improve. He suffered physical pain and suffering, improper loss of liberty, and emotional distress.

**VII.**

**FOURTH CAUSE OF ACTION**

**(Bane Act)**

(California Attorney General)

68. Mr. Friwat repeats and realleges the allegations set forth in paragraphs 1 through 67 as if fully set forth herein.

69. Mr. Friwat had rights under the Sixth and Fourteenth Amendments of the U.S. Constitution to be brought before a judge and notified of the charges against him, and to

13

the formal attachment of his right to counsel. California law secured Mr. Friwat these rights in Penal Code Sections 825.

70.    Mr. Friwat also had rights under the Eighth and Fourteenth Amendments to bail that was not excessive, along with a right under California Penal Code Section 821 to be promptly brought before a judge for a bail hearing.

71.    Defendant California Attorney General interfered with Mr. Friwat's exercise and enjoyment of rights secured by the Constitution of the United States, by failing to ensure he received an arraignment in San Diego County or a bail hearing.

72.    The interference occurred by way of threats, intimidation, or coercion. Deputy Attorney General 1 received notice, more than once, that the California Attorney General had an obligation to provide Mr. Friwat with a timely arraignment and the opportunity for a bond hearing, yet disregarded these notices and the law. As a result, Mr. Friwat had no chance ever to see a judge in San Diego County. Against his will, he was held without any notice of the charges against him, and without the formal attachment of his constitutional right to counsel. So too, he was held without any opportunity to seek bail and post it, thereby avoiding the transfer to Sacramento County by the San Diego Sheriff's Office.

73.    Defendant California Attorney General acted with the specific intent to deprive Mr. Friwat of his constitutional rights. His Office knowingly and intentionally failed to ensure that Mr. Friwat was brought before a judicial officer within the time required by law for an arraignment, and to ensure that he received a timely bail hearing and the opportunity to seek non-excessive bail. Deputy Attorney General 1 took no steps in advance of obtaining the arrest warrant to ensure Mr. Friwat was afforded his rights in San Diego County, and disregarded repeated notice provided by Mr. Friwat's counsel that Mr. Friwat had these rights. Deputy Attorney General 1 failed to act in any way that would have remedied these failures while Mr. Friwat sat in custody in San Diego County. As a result, Mr. Friwat sat for days in custody without notice of the reason for his

deprivation of liberty, and without the formal attachment of his right to counsel. So too, Deputy Attorney General 1 prevented Mr. Friwat from seeking bail in San Diego County.

74. Plaintiff suffered injury as a result of the Defendant's conduct. Though federal and state law seek to prevent pretrial detainees from sitting in custody without notice of the reasons why – the charges – the California Attorney General intentionally caused Mr. Friwat to sit in jail for days without notice. Mr. Friwat suffered substantial psychological distress, as a man held in jail without being given a reason. Further, through the acts and omissions of the California Attorney General, Mr. Friwat was deprived of the chance to seek and post an appropriate bond, and was transported against his will by the San Diego Sheriff's Office in a way that caused him serious injuries.

75. Deputy Attorney General 1 acted at all times pursuant to his employment by the California Attorney General. All of his acts and omissions occurred during in the course of his position as the prosecutor overseeing the case against Mr. Friwat. The California Attorney General therefore liable for the acts and omissions of Deputy Attorney General 1 acting within the scope of his employment.

## VIII.

### FIFTH CAUSE OF ACTION

### (Negligence)

(Sheriff's Deputy Doe Defendants)

76. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 75 as if fully set forth herein.

77. Defendants Sheriff's Deputies Does owed a duty of care to Mr. Friwat. As the Sheriff's Deputies transporting a pretrial detainee, they had a duty to transport plaintiff safely, including a duty to drive in a reasonable manner and to secure him safely. This duty of care exists under law, and was set forth in the San Diego Sheriff's Office's written policies. It was also reflected in California law requiring, among other things, that Mr. Friwat be secured for his safety while traveling on the roads.

78. Defendant Does breached their duty. They secured Mr. Friwat in a five-point shackle and placed him in a cage inside a holding pen affixed to a Sheriff's Office's truck. They had him sit, unrestrained for safety, on a metal bench inside the cage. They then drove at unreasonable speeds and in unreasonable manners for hours, causing Mr. Friwat to bounce, jostle, and suffer injuries.

79. In particular, Sheriff's Deputy Does drove at an unsafe speed while aware that the conditions of the roads could cause Mr. Friwat to bounce around in his cage, unsecured, on a metal bench. When Mr. Friwat had his opportunity to complain about the pain he was experiencing as a result of the driving, one of the Deputy Does responded by observing that the roads had potholes – in essence, by saying that there was nothing to be done about Mr. Friwat's circumstances.

80. The breach of the duty owed to Mr. Friwat was the but-for cause of his injuries. Like any person traveling on the roads, Mr. Friwat needed to be secured with appropriate safety restraints and seated in a way that he could avoid serious bodily injuries while simply riding in a vehicle traveling on the roads. So too, as a passenger being transported in a compulsory manner, Mr. Friwat needed to be transported by a driver traveling safely. Because of the way that the Doe Defendants shackled him and seated him, and the way they drove, he suffered injuries that safety restraints and rules about safety were all meant to prevent.

81. The breach was a proximate cause of Mr. Friwat's injury. It was entirely foreseeable to the Doe Defendants that a person seated on a metal bench, five-point shackled and unsecured for safety, could be injured by being bounced and jostled in a cage like the one Mr. Friwat was held in. So too, it is reasonable and appropriate to hold the Doe Defendants liable for their breach; it is a simple and straightforward matter to secure in-custody detainees in reasonably safe manners. Indeed, doing so is required by the written policies of the Sheriff's Office.

82. As a direct and proximate result of the Doe Defendants' negligence, Mr. Friwat sustained a cracked vertebra. He has suffered physical injury, pain and suffering, medical expenses, and emotional distress.

## IX.

## SIXTH CAUSE OF ACTION

## (Recklessness)

(Sheriff's Deputy Doe Defendants)

83. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 82 as if fully set forth herein.

84. Defendant Sheriff's Deputy Does engaged in conduct that created a substantial and unjustifiable risk of harm. Deputy Does knowingly shackled Mr. Friwat with a five-point shackle and then placed him in an individual cage inside the holding pen of the Ford F450 truck, on a metal bench and without a safety restraint. Nothing about Mr. Friwat's charges, personal characteristics, or history supported the decision to shackle him in this way. Further, the Deputy Does placed him in an individual cage, where he could be neither a threat to any other person nor at a risk of harm from any other person. The placement of Mr. Friwat in the cage, shackled in this way, was unjustified and unjustifiable, and it imposed a substantial risk of harm.

85. Defendant Deputy Doe #1 (and/or 2 through 5) then drove the Ford F450 truck in an unreasonable manner that caused Mr. Friwat to bounce around in the cage, slamming against the metal bench and the walls of the cage. Deputy Doe #1 (and/or 2 through 5) was aware of the risk, or should have been aware of the risk, to Mr. Friwat posed by the conditions of his confinement and her driving.

86. As a Sheriff's Deputy with training and experience in transporting detainees, Defendant Does knew or should have known that failing to secure Mr. Friwat safely and driving in an unreasonable manner posed a risk of injury. On information and belief, Deputy Does were on notice of the Sheriff's Office's written policies requiring them to take care to transport Mr. Friwat safely and to secure him with a safety restraint. So too, on

17

information and belief, and law-enforcement officers they were aware that the law required Mr. Friwat to be restrained for his safety.

87.   Defendant Sheriff Does consciously disregarded the risk their conduct posed to Mr. Friwat. All the steps they took in furtherance of the transport were in clear disregard of his safety. And when placed on specific notice that their conduct was causing injury and harm to Mr. Friwat, they disregarded it with a comment about potholes.

88.   Mr. Friwat suffered injury as a result. As set forth throughout this Complaint, Mr. Friwat suffered a spinal fracture, and ongoing pain in his neck and back, from being bounced and jostled for hours in the cage of the Ford F450.

89.   As a direct and proximate result of Defendant Deputy Does' reckless conduct, Mr. Friwat has sustained a cracked vertebra, physical pain and suffering, and emotional distress.

## X.

## SEVENTH CAUSE OF ACTION

## (Vicarious Liability)

(County of San Diego)

90.   Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 89 as if fully set forth herein.

91.   Defendant Sheriff's Deputy Does committed torts of negligence and recklessness.

92.   As alleged, Defendant Does were negligent and reckless in the way they secured Mr. Friwat and transported him. Their conduct breaching their duty of care and consciously disregarded a substantial risk of harm.

93.   Defendant Does were acting within the scope of their employment by the San Diego County Sheriff's Office. They were acting in their official capacities as Sheriff's Deputies when they effected the transportation of Mr. Friwat to the custody of the Sacramento County Sheriff's Office.

94. The County is liable under law for the tortious conduct committed by the Deputy Does, pursuant to California Government Code Sections 815.2 and 2338. Nor does California law confer any immunity on the Sheriff's Office; for example, Government Code Section 845.6 does not apply to these circumstances.

95. As a direct and proximate result of Defendant Deputy Does' negligence and recklessness, for which Defendant is liable, Mr. Friwat sustained a wedge fracture, physical pain and suffering, medical expenses, and emotional distress.

## XI.

## EIGHTH CAUSE OF ACTION

## (Vehicle Code § 17001)

(Defendant County of San Diego)

96. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 95 as if fully set forth herein.

97. The County is liable to Mr. Friwat under California Vehicle Code Section 17001 for the negligent operation of a motor vehicle by its employees operating in the scope of their employment.

98. Vehicle Code section 17001 creates a statutory exception to public entities' general tort immunity by specifically imposing liability upon a public entity for negligent or wrongful acts in the operation of motor vehicles by employees acting within the scope of employment.

99. At all relevant times, Defendant Sheriff's Deputy Does 1-5 were acting within the scope of their employment when operating the Sheriff's F450 truck to transport Mr. Friwat, a pre-trial detainee. Their negligent operation of the vehicle while transporting Mr. Friwat constituted a negligent act in the operation of a motor vehicle that proximately caused his injuries. Specifically, after Defendant Sheriff's Deputy Does failed to secure Mr. Friwat safely, they failed to exercise ordinary care in how they transported him, causing him to bounce and jostle in the case, inside the holding pen, of the Ford F450.

19

100.    Vehicle Code Section 17001 is not a general liability statute, but one that specifically imposes liability upon a public entity for covered conduct. Here, the County is liable for the negligent acts of the Defendant Deputy Does.

101.    California Government Code Section 844.6, which generally provides immunity to public entities for injuries to prisoners, does not bar this claim. California Government Code Section 844.6 provides that (with certain statutory exceptions) a public entity is not liable for an injury to a prisoner. However, Section 844.6 expressly states that nothing in the section affects the liability of a public entity under Article 1 (commencing with Section 17000) of Chapter 1 of Division 9 of the Vehicle Code. This statutory exception preserves liability under Vehicle Code Section 17001 even when the injured party is a prisoner or pre-trial detainee.

## XII.

### PRAYER FOR RELIEF

WHEREFORE, Mr. Friwat requests that this Court grant the following relief:

A.    Compensatory damages against the County of San Diego, Sheriff Martinez, and Deputy Doe Defendants for physical injury (including medical expenses), pain and suffering, and any permanent disability or disfigurement resulting from Mr. Friwat's broken vertebra and his ongoing pain and suffering in his neck and spine.

B.    Compensatory damages against the County, Sheriff Martinez, and Deputy Doe Defendants for emotional distress, including anxiety, fear, and psychological harm resulting from the unsafe transportation.

C.    Compensatory damages against defendant California Attorney General for loss of liberty resulting from the unlawful detention without a timely arraignment and for the failure to provide a timely bail hearing.

D.    Punitive damages against defendant Sheriff's Deputy Doe Defendants for willful, malicious, or reckless conduct the transportation of Mr. Friwat.

E.    Nominal damages against all Defendants for violations of Mr. Friwat's constitutional rights.

F.    Attorney's fees and costs pursuant to 42 U.S.C. § 1988 for claims brought under 42 U.S.C. § 1983, and pursuant to the Bane Act.

G.    Such other relief as the Court deems just and proper.

## XI.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and the Seventh Amendment to the Constitution, Mr. Friwat hereby demands a jury trial of this action.

Respectfully Submitted,

Dated: February 16, 2026               IREDALE & ROTH APC

By: */s/ Danielle Iredale*
    Danielle R. Iredale
    Owen Roth
    Counsel for Joseph Friwat

21